Filed 3/7/13  In re Angelo W. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ANGELO W., a Person Coming Under the Juvenile Court Law. | B242605 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>R.W.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK61597) |

APPEAL from an order of the Superior Court of Los Angeles County, Veronica S. McBeth, Judge.  Affirmed.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

INTRODUCTION

In this appeal, mother R.W. contends there is insufficient evidence to support the juvenile court's order removing three-year-old Angelo W. from her custody (Welf. & Inst. Code, § 361).[1] We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The Department of Children and Family Services (the Department) received a referral in September 2011 alleging mother had been arrested for possession of a methamphetamine pipe and Angelo, then 23 months old, was missing. Mother has a long history, beginning in 1994, of arrests and convictions for possession, or being under the influence, of controlled substances. Mother was transient and left Angelo with Vicky A. before being arrested. Vicky A. informed the social worker that she had lived with mother but moved out because of mother's drug use, which behavior attracted drug dealers and users. The maternal grandmother refused to allow mother into her house because of mother's methamphetamine use and refusal to seek help. Mother had completed a drug rehabilitation program and claimed to have been sober for two or three years before relapsing.

Mother also has a long history with the Department dating to 2005. The juvenile court terminated her parental rights to three older children, and she relinquished her rights to a fourth child. She did not know who Angelo's father is, stating there were "[a] couple [of] options."

On October 6, 2011, mother agreed to submit to a drug test and tested positive for methamphetamines and amphetamines. She claimed not to know why the test was dirty. Mother admitted having used drugs two weeks earlier, but denied having a drug problem or that drugs affected her ability to care for Angelo.

On October 13, 2011, the Department removed Angelo from mother's custody and filed a petition alleging Angelo was at risk of harm because of mother's extensive history of drug use, recent positive drug test, and the fact mother had lost her parental rights to

---

[1] All further statutory references are to the Welfare and Institutions Code.

2

Angelo's siblings. (§ 300, subd. (b).) Mother promised to enroll in a residential treatment program at Phoenix House but failed to, reportedly because of a " 'family function.' " The Department recommended that mother be denied reunification services pursuant to section 361.5, subdivision (b)(11) [parent lost parental rights over a sibling and has not made reasonable effort to treat problems leading to sibling's removal]. The juvenile court ordered Angelo detained from mother.

The police arrested mother again in November 2011 for a parole violation and deposited her at the Phoenix House residential drug treatment program pursuant to her criminal sentence. Once in the facility, mother produced negative drug-test results and actively participated in therapy and parenting workshops. The Department changed its recommendation and advised the juvenile court to grant mother reunification services. However, the Department recommended against releasing Angelo to mother just yet because she had only been in treatment a short time. In view of the length of mother's drug abuse, the social worker felt it would be premature to return the child to mother until she had more time to stabilize her rehabilitation and focus on her treatment.

The juvenile court sustained the petition as described above and took judicial notice of the dependencies. It ordered the Department to investigate mother's progress in her rehabilitation program and the quality of mother's visits with Angelo, and to report any changes in the Department's recommendations.

Two weeks later, the Department reported that mother remained in compliance with her residential treatment program, and continued to test negative for drugs. The Department again wrote: "Due to Mother's long standing substance abuse history [the Department] believes it is still early in Mother's recovery process and release of the child to Mother at this time is premature." Over the Department's objections, the court granted mother two-hour unmonitored visits twice a week with Angelo at her residential treatment facility.

Phoenix House closed down for lack of funding and so mother transferred to Walden House. The social worker observed mother's visits and found that Angelo appeared happy and comfortable in mother's presence. Mother acted appropriately.

3

Walden House confirmed it would accommodate Angelo, if the court released him to mother's care.

At the time of the May 2012 disposition hearing, mother was in compliance with her drug treatment program and with the terms of her parole. According to her parole officer, mother accepted full responsibility for her actions and expressed remorse for her crimes. Her parole will expire in March 2014.

At the disposition hearing, mother called Walden House's Program Director who did not see any drawbacks to having Angelo placed with mother at the facility. The director did acknowledge on cross-examination that mother was free to leave the program at any time and could simply walk out the door with the child.

Mother called her counselor at Walden House who testified that mother was doing well in the program and it would be appropriate for Angelo to reside there with her. However, the counselor did not know how long mother had been sober, the length of mother's drug history, whether mother had participated in a recovery program before, or that mother had tested positive for methamphetamines as recently as the previous October.

Mother could not remember how many drug rehabilitation programs she had previously attended and acknowledged those earlier attempts at recovery were unsuccessful. She claimed she was finally willing to become sober because she had lost everything when she lost Angelo. She had not bonded with her other children because she gave birth to them while incarcerated and the authorities removed the babies immediately after their birth.

At the close of the hearing, the juvenile court ordered Angelo removed from mother's custody. (§ 361, subd. (c).) The court found that the child would be in substantial danger if he were not removed and there was no reasonable means by which the child could be protected without his removal because of mother's extensive history of drug abuse and the seriousness of the drugs involved, where the relapse rate is extremely high. Noting mother's long period of methamphetamine use and her transience, the court congratulated mother on doing what was asked of her, but ruled "it is too soon to have

your child placed with you." The court was "not willing to risk placement of [mother's] son with [her] until [she] had a longer period of sobriety." The court ordered family reunification services for mother and awarded her monitored visitation outside of her program and unmonitored visits in her program. Mother filed this appeal.

CONTENTION

Mother contends that there is insufficient evidence to support the order removing Angelo from her custody.

DISCUSSION

To remove a child from his or her parent's custody, the juvenile court must find "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody. . . ." (§ 361, subd. (c)(1)). Removal must be supported by clear and convincing evidence. (*In re Henry V*. (2004) 119 Cal.App.4th 522, 528-529.) " 'A removal order is proper if it is based on proof of parental inability to provide proper care for the minor and proof of a potential detriment to the minor if he or she remains with the parent. [Citation.]' " (*In re Miguel C*. (2011) 198 Cal.App.4th 965, 969.) " 'The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on *averting harm to the child*. [Citation.]' [Citations.]" (*Ibid*., italics added.) In this regard, the court may look to a parent's past conduct in addition to present circumstances. (*In re Cole C*. (2009) 174 Cal.App.4th 900, 917.)

We review an order removing a child from parental custody for substantial evidence in a light most favorable to the juvenile court findings. (*In re J.K*. (2009) 174 Cal.App.4th 1426, 1433.) "In reviewing the sufficiency of the evidence on appeal, we look to the entire record to determine whether there is substantial evidence to support the findings of the juvenile court. We do not pass judgment on the credibility of witnesses, attempt to resolve conflicts in the evidence, or determine where the weight of the evidence lies. Rather, we draw all reasonable inferences in support of the findings,

5

view the record in the light most favorable to the juvenile court's order, and affirm the order even if there is *other evidence that would support a contrary finding*. [Citation.] When the trial court makes findings by the elevated standard of clear and convincing evidence, the substantial evidence test remains the standard of review on appeal. [Citation.] The appellant has the burden of showing that there is no evidence of a sufficiently substantial nature to support the order. [Citations.]" (*In re Cole C.*, *supra*, 174 Cal.App.4th at pp. 915-916, italics added.)

The evidence amply supports the juvenile court's decision to remove Angelo from mother's custody. Mother's long history of drug abuse and rehabilitation relapses is serious and intractable. Mother is 32 years old and has been abusing drugs for 19 of those years. Her drug of choice is methamphetamines and amphetamines which have a high rate of recidivism. She admitted to having attended more substance abuse programs than she could remember and she could recall having completed only *one*. The Department repeatedly advised the court that mother needed more time in recovery. As a consequence of her drug abuse, people in her life, such as her own family and Vicky A., refuse to be around mother, and so mother is transient. She also lost parental rights to her other children because of her drug abuse, a statutory justification for denying reunification services outright. (§ 361.5, subd. (b)(11).) We reject mother's argument that Walden House would protect Angelo. The director testified that Walden House would not prevent mother from leaving the program with Angelo at any time. And, mother's counselor there was unaware of the extent of mother's drug use and recidivism when she opined it would be appropriate for Angelo to reside with mother there. The focus of section 361.5, subdivision (c) is to *avert* harm to the child. (*In re Miguel C.*, *supra*, 198 Cal.App.4th at p. 969.) Therefore, although mother has made strides in her efforts at sobriety this time around, given her entrenched history of drug abuse and relapses, the record amply supports the juvenile court's finding by clear and convincing evidence that it was premature to return the baby to mother's custody after only six months of rehabilitation.

6

DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ALDRICH, J.


We concur:




KLEIN, P. J.




CROSKEY, J.